**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TERRY J. DIMARTINO | CRIM. NO. 3:14CR175(AWT) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

For the reasons set forth below, the defendant's motion for compassionate release under the First Step Act is being denied.

## I. FACTUAL BACKGROUND

The defendant, Terry J. DiMartino, was charged in an Indictment with committing eight offenses. He was convicted at trial on all charges.

In Count One the defendant was charged with Corrupt Endeavor to Obstruct and Impede the Due Administration of the Internal Revenue Laws, in violation of 26 U.S.C. § 7212(a). The Indictment charged, and the evidence at trial established, that from at least October 20, 2004 through on or about May 16, 2014 the defendant obstructed and impeded the due administration of the internal revenue laws by a variety of means. The last year for which the defendant filed an accurate tax return and paid the tax he owed was the 1996 tax year. The defendant started receiving collection

notices from the Internal Revenue Service ("IRS") in October 2000, and in September 2004 the IRS issued a final notice of intent to levy. Although Count One charges the defendant based on his course of conduct that commenced in October 2004, that course of conduct was preceded by years of the defendant not paying his taxes. Moreover, his course of conduct continued after IRS special agents executed search warrants at his home and office and collected boxes of evidence in February 2005.

In addition to filing the false tax returns that were the subject of Count Two and Count Three, DiMartino filed false tax returns in June 2008 and June 2012. The defendant submitted worthless bonds to the Secretary of the Treasury purporting to satisfy his tax liabilities in February 2008, September 2009, and July 2011. He submitted false and threatening correspondence to the IRS in an attempt to defeat its assessment, collection, and investigative efforts on dozens of occasions, including in November 2009, August 2010, July 2012, and May 2014. He used nominees to hide assets from the IRS to prevent the IRS from collecting on his tax liabilities. In 2004 he created a family trust to purchase the house he used as his personal residence. DiMartino earned significant sums selling insurance, and during the period from January 2005 to March 2013 he caused various insurance companies who owed him commissions to pay the

commissions through nominees. From February 2006 to at least March 2013, he paid personal expenses out of a bank account he held in the name of Realistic Ventures Inc..

After the IRS issued levies against the commissions he was earning, DiMartino attempted to prevent insurance companies from withholding taxes on his compensation and complying with IRS levies. The defendant sent frivolous and threatening documents to insurance companies, and in some of these documents, as well as in calls, he threatened legal action if the insurance companies did not accede to his demand that they stop complying with the IRS levies. See Trial Tr. (ECF No. 269) at 225; (ECF No. 270) at 589. The evidence at trial showed that insurance companies took the defendant's threats seriously and were concerned about being sued and incurring legal costs. See id. at 309. The defendant also sent insurance companies false releases of levies.

Count Two of the Indictment charged the defendant with filing, and the evidence at trial established that the defendant filed, a false tax return on or about September 26, 2008, in violation of 26 U.S.C. § 7206(1).

Count Three of the Indictment charged the defendant with filing, and the evidence at trial established that the defendant filed, a false tax return on or about October 23, 2008, in violation of 26 U.S.C. § 7206(1).

Counts Four through Eight charged the defendant with willfully failing to file a tax return for the following calendar years: 2008 (Count Four); 2009 (Count Five); 2010 (Count Six); 2011 (Count Seven); and 2012 (Count Eight).

The defendant earned hundreds of thousands of dollars each year, earning a total of $2.4 million from 2004 to 2013. Over the course of that ten-year period he paid approximately $32,000 in taxes and all but $500 of that was paid only because of withholding and levy payments.

On March 28, 2016, the jury found the defendant guilty on all counts. The defendant requested time to obtain counsel. A few months later the defendant obtained counsel who subsequently filed a motion to determine the defendant's competency, which was denied by the court after a hearing.

On June 29, 2018, the defendant was sentenced to a total effective sentence of 70 months of imprisonment, as follows: 36 months on Count One and 36 months on Count Two, to be served concurrently; and 34 months on each of Counts Three through Eight, to be served concurrently with each other and consecutively to the sentences imposed on Counts One and Two. The court ordered, as a special condition of supervised release, that the defendant to pay restitution in the amount of $658,547.62 to the Internal Revenue Service.

In explaining the reasons for the sentence that was imposed, the court observed:

> In this case I am most aware of the need to impose a sentence that provides just punishment and serves the goal of deterring others from committing the offense committed by you, as well as serves the goal of specific deterrence.

Sentencing Tr. (ECF No. 334) at 43. The court explained:

> And more significantly, in my view, we have the length of the course of conduct here, which is extraordinarily long. In fact, one of the longest courses of conduct I have encountered in all the tax cases I've had. And it is a continuing course of conduct.
>
> So I think there is really a need for adequate recognition of what's just punishment and specific deterrence.

Sentencing Tr. (ECF No. 334) at 44.

On July 26, 2018 the defendant surrendered and began serving his term of imprisonment. He is being held at USP Canaan in Waymart, Pennsylvania, which has a population of 1,172 inmates and an additional 101 inmates at the Camp.[1]

## II. LEGAL STANDARD

Section 3582 of Title 18 of the United States Code provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--
>
> **(1)** in any case--
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

[1] See https://www.bop.gov/locations/institutions/caa/ (last visited May 8, 2020).

> receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction; or
> **(ii)** . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582 (c).

The applicable policy statement is Section 1B1.13 of the Sentencing Guidelines, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
> **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 explains what extraordinary and compelling reasons are:

**1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.

"The requirement of a determination by the Director of the BOP that 'Other Reasons' exist to support a sentence reduction under the residual category has not been revisited by the Sentencing Commission since the First Step Act eliminated the requirement of a motion by the BOP." United States v. Rivernider, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020).

> While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. See, e.g., United States v. Rivernider, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); [United States v. ]Lisi, [No. 15 Cr. 457 (KPF),] 2020 WL 881994, at *3 [(S.D.N.Y. Feb. 24, 2020)] (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," United States v. Ebbers, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," United States v. Zullo, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *2 (D. Conn. Apr. 20, 2020).

## III. DISCUSSION

On March 26, 2020 the defendant submitted a written request to the warden of his facility, asking that the warden make a motion on his behalf that he be granted compassionate release with home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A). In

support of his request, he cited to, inter alia, his medical conditions and the fact that according to the Center for Disease Control ("CDC") he is at the "highest risk for infections of COVID-19". Def.'s Mem. Supporting Sentence Reduction, Ex. 1 (ECF No. 336-1) at 2 of 11. The defendant's request was denied on April 15, 2020. Thus, the defendant has satisfied the exhaustion requirement in Section 3582(c)(1)(A).

The court must determine, "after considering the factors set forth in section 3553(a) to the extent they are applicable", whether extraordinary and compelling reasons warrant a sentence reduction in the defendant's case and whether such a reduction is consistent with U.S.S.G. § 1B1.13, the applicable policy statement.

The defendant is 66 years old and has a history of heart disease, which has made medical intervention necessary on several occasions during the time he has been incarcerated. He also has Type 2 diabetes. Consequently, he is at high risk of severe complications should he contract COVID-19. The key question then is whether this fact together with the existence of the COVID-19 pandemic and the fact that the defendant is an inmate at USP Canaan constitute extraordinary and compelling reasons warranting a reduction of the defendant's sentence after consideration of the factors set forth in 18 U.S.C. § 3553(a). The court concludes

that they do not.

The circumstances in which the defendant finds himself are extraordinary, but in the context of the applicable Section 3553(a) factors the court decided should receive the most weight at sentencing, the court cannot conclude that there are compelling reasons that warrant a sentence reduction. The defendant deserves our compassion, but his case is not one where compassionate release is appropriate.

As to extraordinary reasons, the defendant's circumstances qualify as very unusual. The COVID-19 pandemic is an extraordinary event and because of the defendant's age and his history of heart disease and the fact that he has Type 2 diabetes the defendant is at high risk of severe complications should he contract COVID-19. The CDC recommends that high risk people like the defendant take specific steps to avoid infection, such as cleaning their hands often, avoiding close contact with others, and cleaning and disinfecting surfaces regularly. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html (last visited Apr. 28, 2020). This will be much more difficult (if not impossible) for the defendant to do while in prison than it would be were he released and on home confinement.

As to compelling reasons, the defendant's case is one where there are compelling reasons not to reduce his sentence, and this fact, standing alone, persuades the court that his motion should be denied. At sentencing, the court considered the Section 3553(a) factors and determined, based on the nature and circumstances of the offense, that in this case serving particular goals of sentencing was a very significant factor. The court explained why it put great weight on the need for the sentence imposed to serve the goals of just punishment and specific deterrence, in addition to general deterrence. (The introductory comment to Part T of the Sentencing Guidelines states that "deterring others from violating the tax laws is a primary consideration underlying these guidelines." U.S.S.G. § 2T1.1 introductory cmt. (Nov. 1, 2015)).

The defendant began serving his sentence on July 26, 2018. Assuming good time credit, the defendant has served approximately 35% of his sentence. Because of the extraordinary length of the defendant's course of criminal conduct and the fact that it was a continuing course of conduct from which he could not be deterred and during which he sent false and threatening correspondence to both the IRS and insurance companies, the court cannot reconcile an approximately 65% reduction of the defendant's sentence with the court's conclusion (at the time of sentencing and now) that

the defendant should serve a sentence that constitutes just punishment for his offense conduct and provides specific deterrence. In addition, were the defendant's motion granted, there would be a striking contrast between his situation and that of a defendant contemplated by Application Note 1(B) of Guidelines Section 1B1.13; such a defendant would not only be at least 65 years old and experiencing serious deterioration of physical health because of the aging process, but would also have served the lesser of at least ten years or 75% of his term of imprisonment. Also, according to Bureau of Prison's memorandum issued on April 22, 2020, it has generally prioritized for home confinement inmates who have either (i) served at least 50% of their sentence, or (ii) have 18 months or less remaining on their sentences and have served 25% or more of their sentence. The defendant has not served 50% of his sentence, and while he has served more than 25% of his sentence, he has far longer than 18 months remaining.

Moreover, there is an additional factor that undercuts the defendant's argument that there are compelling reasons to reduce his sentence. On March 30, 2020, the Bureau of Prisons issued "Guidance for COVID-19 Screening of Inmates". Not only has USP Canaan been very attentive to the defendant's medical conditions, as evidenced by the defendant's extensive medical records, but the

only evidence is that USP Canaan has taken the COVID-19 pandemic seriously and managed the risk appropriately and in accordance with the Bureau of Prisons guidance. The government's response reports that one inmate tested positive for COVID-19 at USP Canaan in March 2020 and two staff members subsequently tested positive but have recovered, and that as of April 28, 2020, there were no known current inmate or staff cases at USP Canaan.[2] As of May 6, 2020, USP Canaan reported no inmates and one staff member testing positive and no deaths of inmates or staff members.[3] By way of contrast, 19 other Bureau of Prisons facilities reported 15 or more (in some cases many more) inmates testing positive, and an additional 27 facilities reported from 1 to 7 inmates testing positive.[4]

What is sought here is release from prison to decrease the risk of the defendant contracting COVID-19--a risk that can not be eliminated even if he is released. Compared to the typical Bureau of Prisons inmate, the defendant is at greater risk of severe complications should he contract COVID-19, but it can not be said that he is at a greater risk of contracting COVID-19 than a typical Bureau of Prisons inmate, and contracting COVID-19 can have serious consequences, including death, for even young,

---

[2] See Gov't Response (ECF No. 338) at 6.
[3] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html (last visited May 5, 2020).
[4] See id.

otherwise healthy people. Serving the goal of just punishment and specific deterrence in the case of this defendant, who engaged in an extraordinarily long and continuing, undeterred course of conduct, outweighs the need reduce the risk, by reducing the defendant's sentence, that he will contract COVID-19.

Accordingly, the court, after considering the factors set forth in 18 U.S.C. § 3553(a), concludes that extraordinary and compelling reasons do not warrant a sentence reduction in the defendant's case.

## IV. CONCLUSION

Accordingly, the defendant's motion for compassionate release under the First Step Act (ECF No. 336) is hereby DENIED.

It is so ordered.

Signed this 8th day of May, 2020 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge